[Civ. No. 60829. Second Dist., Div. Four. Mar. 18, 1983.]

MERCURY CASUALTY COMPANY, Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

COUNSEL

Ervin, Cohen & Jessup, W. Edgar Jessup, Jr., Horace N. Freedman and Reeve E. Chudd for Plaintiff and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Arthur C. de Goede, Assistant Attorney General, Edmond B. Mamer and Herbert A. Levin, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**KINGSLEY, J.**—Plaintiff appeals from an adverse judgment in an action involving the validity of a tax. We reverse.

I

Plaintiff is an insurance company, doing business in California, writing only so-called "casualty" insurance. As such, it is taxable by the State of California at a rate based on the "gross premiums" received by it from its business in this state. Plaintiff offers to prospective insureds the option of either paying, in advance, in cash, the annual premiums on policies written by it, or of paying part of such premiums in cash and partly by an installment note for the

balance. In the latter case, the insured is charged an amount calculated to cover the increased overhead to plaintiff for handling the notes and collecting them, plus a sum equal to interest at the going rate on the principal of the notes.

Plaintiff treats the face of the note as part of the "gross premium" and pays the "gross income" tax thereon; it also treats the "service charge" as part of the premium and pays the tax thereon. It regards the interest charged as not being part of the "gross premium" and, in this litigation, resists the board's position that it is a third element of the "gross premium." We agree with the plaintiff.

■ The term "gross premium" has an accepted meaning in this area. It consists of two elements: (1) a sum calculated to provide the insurer with a reserve adequate to pay claims when and as they accrue ("net premium"); and (2) a sum ("the load") calculated to cover the day-to-day operating costs of the insurer, including sales commissions. The sum of those elements form the "gross" premium on which the tax is based. ■ Plaintiff has, correctly, treated the "service charge" on the notes as part of the "load" above referred to.

However, the state tax law on insurers is limited to the tax on "gross premiums" (although all corporate income is taxable by the federal government). Thus it is admitted that any income to plaintiff from investments is not includable in the state's tax base. It follows that, in those cases where an insured pays the entire advance premium in cash, plaintiff could, and would, invest the "nonload" part of the premium and earn a nontaxable income therefrom. It is the position of plaintiff that, in computing the gross premium it has satisfied its full obligation by its treatment of the "service charge" and the face value of the note as part of the "gross premium" and that the interest it collects is no more than income from an investment—i.e., a loan to the insured. We agree.

The case replied on by the trial court and the board is not helpful. In *Allstate Ins. Co.* v. *State Board of Equal* (1959) 169 Cal.App.2d 165 [336 P.2d 961], the amount in issue was a flat fee imposed on each installment calculated on the additional bookkeeping involved in dealing with such installment payments. In other words, the case dealt only with the "load" portion of the insurer's charge, similar to the "service charge" in the case at bench. It did not deal with any "interest" charge on the delayed installments.

When this case was originally before us, we held as above set forth. The Supreme Court has, by its order of February 16, 1983, returned the case to us "for reconsideration in the light of *Metropolitan Life* v. *Board of Equalization* (1982) 32 Cal.3d 649 [186 Cal.Rptr. 578, 652 P.2d 426]." We have reviewed our earlier opinion in the light of the decision to which the Supreme Court has

referred us. We conclude that that decision is clearly distinguishable from the case before us and does not compel a result differing from our original determination.

*Metropolitan* involved the practice of an insurer who writes group medical benefit insurance, providing benefits to the employees of its insureds. The policies require the insured employer to pay the benefits up to an agreed "target" amount, with the insurer paying benefits beyond that amount. The employer pays to the insurer a premium for the policy and also deposits with the insurer a sum equal to the "target" amount. The insurer processes the claims as filed, pays allowed claims out of the sum deposited by the employer until that fund is exhausted, and then pays the balance, if any, out of the premium paid to it. *Metropolitan* held only that the sum deposited by the employer was legally the equivalent of an additional premium, having the effect of increasing the reserve the insurer needed to be able to pay claims, and thus was includable in the "gross premium" on which tax must be paid. The only analogy that we can see to the case before us is that the face of the installment notes also serves to meet plaintiff's reserve requirements—a fact that plaintiff admits in its payment of taxes on the face of the notes. As far as the opinion in *Metropolitan* shows, there was no issue as to any interest that the insurer might have received from investing the employer's "trigger" payment until it was used to meet the employer's obligation. The present case involves only such interest, since the insured's payment, whether in case or by note, is admittedly included in "gross premium."

## II

Plaintiff also contends that the board's position would result in a denial to it of equal protection, since the board does not treat as premium the interest charged by life insurance carriers on "policy loans" made to such insurance company's policy holders to pay annual premiums. Because we conclude, for the reasons above discussed, that the board's position here, considered on its own merits, is wrong, we need not, and do not, consider the equal protection argument.

The judgment is reversed.

Woods, P. J., and Amerian, J., concurred.

A petition for a rehearing was denied April 5, 1983, and respondent's petition for a hearing by the Supreme Court was denied June 16, 1983.