[No. B013654. Second Dist., Div. Three. Mar. 25, 1986.]

MERCURY CASUALTY COMPANY, Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

36

---

COUNSEL

Ervin, Cohen & Jessup, Horace N. Freedman and Richard Amerian for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Herbert A. Levin, Deputy Attorneys General, for Defendant and Respondent.

OPINION

LUI, J.—Appellant Mercury Casualty Company (Mercury) appeals from the judgment entered below in favor of the respondent State Board of Equalization (Board) following a trial by the court based on stipulated facts and written and oral arguments of counsel. This appeal concerns the precise question of whether Mercury exhausted its administrative remedies under the claims statutes so as to enable it to recover taxes erroneously collected by the Board for the years 1971 through 1973, 1977 and 1978 which it paid under protest. We reject Mercury's contentions and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The parties to this appeal have litigated the propriety of the Board's taxation of such interest as gross premiums for the years 1964 through 1970.[1] In *Mercury Casualty Co.* v. *State Bd. of Equalization* (1983) 141 Cal.App.3d 43 [190 Cal.Rptr. 72] (*Mercury I*), Division Four of this District determined the issue against the Board and held that the interest was not part of the gross premiums for purposes of the gross premium tax. The decision in *Mercury I* became final on June 16, 1983, when our Supreme Court denied the Board's petition for hearing.

Before the decision in *Mercury I* was rendered, the Board conducted audits of Mercury's financial records and assessed deficiencies against Mercury for interest earned on premium notes for the years subsequent to the years involved in *Mercury I.*

On January 2, 1976, the Board issued Mercury a notice of deficiency tax assessment in the sum of $42,590.99 for the years 1971, 1972 and 1973. On January 19, 1976, Mercury sent a check in full payment of the assessment to the State Controller. This check contained a notation on the face "PAID UNDER PROTEST (see over)." The following words appeared on the back of the check: "PAID UNDER PROTEST SUBJECT TO CLAIM FOR REFUND NOT SUBJECT TO GROSS PREMIUMS TAX." The State Controller received the check and remitted to the State Treasurer for negotiation. Of the amount of the deficiency paid, $26,170.75 is at issue in this appeal for the tax and interest pertaining thereto.

Subsequently on May 22, 1980, the Board issued to Mercury a second notice of deficiency tax assessment in the sum of $93,597.99 for the years

---

[1]The tax in question involved interest on premium notes used to finance automobile insurance policies written by Mercury for its insureds. Those insureds electing to finance their policies were charged interest pursuant to a premium financing note and agreement.

1977 through 1979. On May 28, 1980, Mercury sent a check in full payment of this assessment. The back of the check contained the following notation: "Paid under protest subject to claim for refund not subject to Gross Premium tax." The amount in question in this appeal is $66,178.43, representing tax and interest pertaining thereto.

According to appellant's trial brief and its opening brief on appeal, Mercury contacted the Board after the decision in *Mercury I* was issued seeking refunds of the taxes for the years subsequent to 1971 which are at issue here and was informed that Mercury was not entitled to such a refund since the statute of limitations for claiming a refund had expired. On July 2, 1984, Mercury filed its complaint seeking refund of these taxes and interest. Mercury filed a timely notice of appeal from the trial court's judgment rendered against it.

### APPELLANT'S CONTENTIONS ON APPEAL

In summary, Mercury's contentions on appeal are as follows:

1. Its checks dated January 19, 1976, and May 28, 1980, and the words contained thereon, constituted a proper claim for refund under the facts and circumstances of this case;

2. Under the facts and circumstances of this case, it should be excused from filing a formal claim for refund because such a filing would have been an idle and useless act;

3. The time within which it was required to file a formal claim for refund was tolled under the equitable tolling doctrine;

4. The relation back doctrine should be applied to allow its complaint filed below to relate back to the date the complaint in *Mercury I* was filed.

Respondent controverts these contentions.

### DISCUSSION

#### I

*Mercury Failed to Exhaust Its Administrative Remedies by Filing a Proper Claim Within the Time Provided by the Statute*

During the relevant period involved in this action, Revenue and Taxation Code section 12978 provided: "No credit or refund shall be allowed or

approved after four years after April 1st of the year following the year for which the overpayment was made, or with respect to a deficiency assessment made under Article 3 of Chapter 4 of this part [dealing with deficiency assessments on insurance tax returns] after six months from the date the deficiency assessment becomes final, or after six months from the date of the overpayment, whichever period expires the later, unless claim therefor is filed with the [C]ommissioner [of Insurance] or the [B]oard [of Equalization] within such period."[2]

Section 12979 provides: "Every claim for refund or credit shall be in writing and shall state the specific grounds upon which it is founded."

Section 12980 provides: "Failure to file a claim for refund or credit within the time prescribed in this article constitutes a waiver of any demand against the State on account of overpayment."

In section 13102, the Legislature has provided that the filing of a claim for refund with the Insurance Commissioner or the Board of Equalization is a mandatory prerequisite to the commencement of a suit for refund of insurance taxes. Section 13102 provides: "No suit or proceeding shall be maintained in any court for the recovery of any amount alleged to have been erroneously or illegally assessed or collected unless a claim for refund or credit has been duly filed in accordance with Article 2 of Chapter 7 of this part.[1]" Footnote 1 of the quoted section provides: "Section 12977 et seq."

As stated in *Patane* v. *Kiddoo* (1985) 167 Cal.App.3d 1207, 1214 [214 Cal.Rptr. 9]: ▮ "The doctrine of exhaustion of administrative remedies was evolved by the courts to promote comity between coequal branches of government and to relieve overburdened courts from the need to deal with cases where effective administrative remedies are available. [Citation.] *The judicially developed rule and, perforce, its exceptions, have no application to an action to recover a tax paid.* Although exhaustion of administrative remedies is prerequisite to such an action, it is compelled not by the judicially created doctrine of comity and convenience but by the constitutional grant of power to the Legislature to prescribe the manner of proceeding in such cases. . . . We are not at liberty to alter the constitutionally authorized process by engrafting onto it exceptions borrowed from the judicially fashioned doctrine of exhaustion of administrative remedies. The authority to

---

[2]Revenue and Taxation Code section 12978 was subsequently amended by Statutes of 1982, chapter 454, section 153, page 1882; these amendments are not pertinent to this appeal.

All further statutory references shall be to the Revenue and Taxation Code unless otherwise indicated.

make such changes is confided in the Legislature by article XIII, section 32, of the Constitution, a provision which, we have recently been reminded by our high court, 'means what it says.' (*Pacific Gas & Electric Co.* v. *State Bd. of Equalization* (1980) 27 Cal.3d 277, 284 . . . .)'' (Italics added.)

■ We are unable to construe the checks remitted pursuant to the notices of deficiency tax assessment as constituting valid claims for refund of taxes. These checks do not meet the provisions of section 12979 which require that a claim shall be "in writing and shall state the specific grounds upon which it is founded."

Mercury's reliance on our Supreme Court's decision in *City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223] is misplaced. In *City of San Jose,* plaintiffs filed a class action suit on behalf of themselves and all real property owners situated in the flight pattern of the San Jose Municipal Airport. The suit sought recovery for diminution in the market value of their property caused by aircraft noise, vapor, dust, and vibration and proceeded on theories of nuisance and inverse condemnation. The City moved for an order declaring the action inappropriate as a class action, but the trial court found the class action appropriate.

The City asserted on appeal that the trial court abused its discretion in certifying the purported class because the claims statutes prohibit maintenance of class actions against governmental entities for inverse condemnation and nuisance. Our Supreme Court issued a writ of mandamus directing the vacation of the order certifying the action as a class suit and the dismissal of the class action part of the matter. ■ The court stated at page 455: "It is not the purpose of the claims statutes to prevent surprise. Rather, the purpose of these statutes is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. [Citations.] It is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim. Such knowledge— standing alone—constitutes neither substantial compliance nor basis for estoppel. [Citations.]"

■ Thus, the governmental entities' actual knowledge of the circumstances surrounding the claim is no basis for dispensing with the claim. Furthermore, the *City of San Jose* decision concerned a general claims statute against public entities (Gov. Code, § 910) as compared to a claims statute involving taxes.

Similarly, we cannot treat the complaint filed herein on July 2, 1984, as a timely claim since it was not filed within six months of the payment made pursuant to the notices of deficiency tax assessment as required by section 12978. We simply cannot accept Mercury's contention that the filing of a claim for refund would have been an idle or useless act during this six-month filing period because the decision in *Mercury I* had not yet been rendered and the controversy over the taxability of such financing interest was still in dispute. It would have been a simple and unburdensome act for Mercury to have filed a claim for refund with the Insurance Commissioner or the Board of Equalization at the time they paid the taxes under protest or shortly thereafter and simply state the reasons which were asserted in the *Mercury I* litigation.

■ ■ ■ ■ ■ While Mercury's victory in *Mercury I* presents a very appealing argument for allowing a recovery of the taxes at issue, we are, as *Patane* v. *Kiddoo, supra,* 167 Cal.App.3d 1207, indicates, powerless to provide relief in view of our Supreme Court's decision in *Pacific Gas & Electric Co.* v. *State Bd. of Equalization* (1980) 27 Cal.3d 277 [165 Cal.Rptr. 122, 611 P.2d 463].[3] The lamentable situation in which Mercury finds itself presents a dilemma which may be the appropriate subject of legislative action. We shall leave it to the Legislature's wisdom to determine whether a more equitable procedure should be allowed in instances where a taxpayer ultimately prevails against the government on legal grounds but whose claim is defeated due to a failure to comply with the technical aspects of a claims statute.

II

*The Equitable Tolling Doctrine Does Not Afford Mercury Any
Relief Under the Facts Presented*

■ Mercury argues that under the doctrine of equitable tolling, the period of limitations set forth in section 12978 was tolled. Mercury asserts that if this court applies the equitable tolling doctrine, "then the limitations period of . . . section 12978 will not have run and Mercury can either file a claim for refund (which would be a counterpart of the claims filed in *Mercury I*) or, as would be more practical, the complaint filed herein can be treated as a claim for refund."

---

[3]We are compelled by the doctrine of stare decisis to follow our Supreme Court's decision. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

Mercury relies on *Collier* v. *City of Pasadena* (1983) 142 Cal.App.3d 917, 924 [191 Cal.Rptr. 681], as authority for the equitable tolling doctrine's applicability. *Collier* in turn cites *Addison* v. *State of California* (1978) 21 Cal.3d 313 [146 Cal.Rptr. 224, 578 P.2d 941].

In *Addison,* our Supreme Court was faced with an action brought against the state and the county for defamation, conversion, and abuse of process, arising from the execution of an allegedly improper search warrant. The suit was filed about the time of the dismissal of plaintiffs' similar suit in federal court, which they had filed three and one-half months after they received notices of rejection of their original claims from the entities concerned. The suit in state court was filed more than eight months after such rejection. Defendants' demurrer was based on Government Code section 945.6, which sets a six-month limitation for the filing of a suit in the superior court after the receipt of a written rejection of a claim. The trial court sustained the demurrer without leave to amend.

The Supreme Court in *Addison* reversed and remanded with directions to overrule the demurrer. Our Supreme Court held that the circumstances of the case called for the application of equitable tolling doctrine which relieves a plaintiff from the bar of the statute of limitations.

The *Collier* decision summarizes the requirements for equitable tolling in *Addison* as follows: "Justice Richardson mentioned three factors considered in deciding whether 'equitable tolling' should be applied in that case. Subsequent Court of Appeal decisions have treated Justice Richardson's words to have created a definitive three-pronged test for invocation of this doctrine. [Fn. omitted.] These three-core elements are: (1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and, (3) good faith and reasonable conduct by the plaintiff in filing the second claim. [Fn. omitted.]" (*Collier, supra,* 142 Cal.App.3d at p. 924.)

 Assuming arguendo that the doctrine of equitable tolling applies to a tax case (a question which we do not decide) and that the facts presented satisfy the three-pronged *Addison* test, application of the doctrine to this appeal will provide Mercury no relief. The latest possible date which could be construed as commencing the period of limitations set forth in section 12978 would be the date the decision in *Mercury I* became final, namely, June 18, 1983. Thus, even if we were to construe the complaint filed below as a claim for refund as Mercury suggests, Mercury provides no explanation as to why it did not file the complaint within six months after June 16,

1983. In fact, it admits in its opening brief that its counsel was informed sometime in July 1983 by the Board that the statute of limitations for claiming such refund had expired and that it was not entitled to such a refund.

If Mercury had immediately proceeded to file a claim for refund or to file its complaint within six months of June 16, 1983, the application of equitable tolling may have provided it relief if the doctrine was applied in this case. But, its complaint was not filed until July 1984, over one year after the *Mercury I* decision became final, well beyond the period required by section 12978.

Finally, we note that *Addison* is distinguishable by the fact that a claim was actually filed prior to the suit in federal court, whereas, no such claim was ever filed in this appeal.

### III

*The Relation Back Doctrine Set Forth in Bendix Corp. v. City of Los Angeles (1984) 150 Cal.App.3d 921 Is Not Applicable to the Facts of This Case*

■ Mercury argues that the relation back doctrine should be applied and the complaint it filed below should relate back to the complaint it filed in *Mercury I.* Mercury relies on the decision of *Bendix Corp.* v. *City of Los Angeles* (1984) 150 Cal.App.3d 921 [198 Cal.Rptr. 370]. We disagree.

In *Bendix,* a taxpayer brought an action against the City of Los Angeles to recover for overpayments of gross receipt taxes for the years 1961 through 1975. The action was held in abeyance pending a decision in another case involving identical legal and factual issues *which the parties agreed would serve as a test case.* That test case was decided in favor of the taxpayer.

The appeal in *Bendix* concerned the taxpayer's second amended and supplemental complaint for the recovery of taxes overpaid in 1976 and 1977. The taxpayer had failed to file a supplemental complaint within six months after the City had denied its claims for refund as required by Government Code section 945.6. The trial court denied the taxpayer's recovery of its overpayment for the years 1976 and 1977. The appellate court reversed and

remanded the cause for the purpose of determining the amount of refunds for the years 1976 and 1977, holding that the taxpayer's second amended and supplemental complaint for recovery of taxes overpaid in 1976 and 1977 "related back" to the filing of its original complaint, thereby eliminating the impact of Government Code section 945.6.

The court in *Bendix, supra,* 150 Cal.App.3d at pages 925-926 stated: "We are persuaded that the preferable approach, and the one which promotes the purpose of the statute of limitations and fosters the policy that cases should be determined on their merits, [fn. omitted] was set forth recently by the United States Court of Appeals for the Ninth Circuit which reasoned, '. . . When the supplemental pleading states new claims, as opposed to curing defects in an original complaint, statute of limitations questions are unlikely to arise, because it is unlikely that the entire limitations period will expire between commencement of suit and the filing of the supplemental pleading. However, in this case such questions are clearly raised. As we see it, whether the supplemental complaint may encompass the entire period following commencement of suit, despite the statute of limitations, will depend upon the nature of the claims raised in the supplemental pleading. If those claims are unrelated to those alleged in the initial complaint, or rely on conduct or events different from those involved in the original action, the statute of limitations should be applied. [Citations.] Where, however, the original pleading gave notice that the alleged wrongful conduct was of a continuing nature, supplemental pleadings addressed to the same conduct should not encounter statute of limitations questions. . . .'

"While unnecessary in light of our holding with respect to the relation back doctrine, we note that the doctrine of equitable tolling, which also requires a balancing of the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public policy served by statutes of limitation (*Addison* v. *State of California* [*supra*] 21 Cal.3d 313, 321 . . .), would likewise be applicable to the facts of the instant case and would require a similar result. [Fn. omitted.]"

While *Bendix* contains rather persuasive language, the decision is clearly distinguishable on facts with the facts presented in the instant appeal. First, we are not dealing with a supplemental complaint but a request by Mercury that we relate the complaint in this case back to a different complaint it filed in *Mercury I. Bendix* provides no authority for this proposition. Secondly, the parties in *Bendix* agreed that the *Bendix* case was a test case—a fact which would compel an equitable bar to the assertion of the statute of limitations by the City of Los Angeles. No such agreement for a "test case" is presented in this appeal.

DISPOSITION

The judgment is affirmed.

Klein, P. J., and Danielson, J., concurred.

A petition for a rehearing was denied April 24, 1986, and appellant's petition for review by the Supreme Court was denied July 9, 1986.