[Nos. C008051, C009273. Third Dist. Oct. 21, 1991.]

SHISEIDO COSMETICS (AMERICA) LTD., Plaintiff and Appellant, v. FRANCHISE TAX BOARD, Defendant and Respondent.

[Opinion certified for partial publication.*]

*All portions of this opinion are certified for publication with the exception of parts II, III and IV of the Discussion.

COUNSEL

McDonough, Holland & Allen, Richard E. Brandt and Robert R. Rubin for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, James B. Cuneo and John D. Schell, Deputy Attorneys General, for Defendant and Respondent.

OPINION

SIMS, J.—In these cases consolidated for appeal, plaintiff Shiseido Cosmetics (America) Ltd. (SCA) sought refund of franchise taxes resulting from defendant Franchise Tax Board (FTB) assessments applying the unitary tax method of worldwide combined reporting (WWCR) (Rev. & Tax. Code,[1] § 25101 et seq.) based on the determination that SCA was engaged in a unitary business with Shiseido Co., Ltd. (Shiseido), its Japanese parent

---

[1] Undesignated statutory references are to the Revenue and Taxation Code.

company, and Shiseido's subsidiaries and affiliates located throughout the world. SCA claimed the application of WWCR violates the United States Constitution.

Both lawsuits involve tax years 1971 through 1975. In the first action, the trial court granted summary judgment in FTB's favor on the ground that SCA failed to exhaust administrative remedies by failing to file a post-payment administrative refund claim before filing suit.

SCA filed the second action after submitting a "perfected" refund claim to FTB for the same tax years that were at issue in the first lawsuit. The trial court granted FTB's motion for judgment on the pleadings in the second suit, on the ground the refund claim was untimely.

SCA appeals from both judgments, contending (1) exhaustion of administrative remedies does not apply, because its action raised only constitutional claims, beyond FTB's jurisdiction; (2) SCA sufficiently complied with the claim filing requirement; (3) FTB should be estopped from urging the exhaustion doctrine because its original answer to the first lawsuit admitted the allegation that SCA had exhausted administrative remedies; (4) the doctrine of equitable tolling served to toll the time within which SCA had to file a claim for refund; and (5) the trial court abused its discretion in allowing FTB to amend its answer to deny that SCA had exhausted administrative remedies.

In this published portion of the opinion we will conclude (1) SCA's constitutional claims are not exempt from the statutory requirement that SCA file a claim for refund; and (2) no sufficient refund claim was filed. In an unpublished portion of the opinion, we reject SCA's remaining contentions. We will therefore affirm the judgments.

FACTUAL AND PROCEDURAL BACKGROUND

In December 1978, SCA protested notices of proposed FTB assessments for tax years 1971 to 1975 based on Shiseido's worldwide operations, on the ground such assessment imposed a tax on companies not doing business in California or the United States, and on income from sources outside of California. The protest, filed under section 25137,[2] stated the proposed

---

[2]Section 25137 provides: "If the allocation and apportionment provisions of this act do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may petition for or [FTB] may require, in respect to all or any part of the taxpayer's business

assessments were contrary to the statutes (§§ 25101, 25102) and "in contra-
vention of the Commerce Clause and Foreign Relations Clause of the United
States Constitution and the Due Process Clause of the Fourteenth Amend-
ment to the United States Constitution and the Treaty of Friendship, Com-
merce and Navigation between the United States and Japan."[3]

Apparently, the protest was unsuccessful, because in February 1980, SCA
petitioned the State Board of Equalization (SBE) for redetermination.
(§ 25667.)

In June 1980, FTB and SCA stipulated to remove the administrative
appeal from SBE's active calendar pending the outcome of litigation by
other taxpayers on the constitutional issue. In March 1984, SBE wrote to
SCA requesting points and authorities, in light of a United States Supreme
Court case[4] assertedly deciding the issue in FTB's favor. SCA responded that
the United States Supreme Court had expressly declined to address the
applicability of its decision to state taxation of domestic (United States)
corporations with foreign (non-United States) parents or foreign subsidiaries.

On May 18, 1984, SBE replied: "We gather that you are heavily relying
upon constitutional arguments which would essentially place this matter
beyond the decision-making authority of our Board. If you are willing to
concede all but the constitutional arguments and would stipulate with the
Franchise Tax Board that the first final reported appellate decision on the
constitutional issue in either of the two pending California court actions, i.e.
*Alcan Aluminum Corporation* and *Beecham, Inc.*, would be totally binding
and dispositive of the appeal, we would have a firm basis for a continued
deferral."

SCA wrote back that three classes of issues were involved: (1) constitu-
tionality of utilization of the unitary business approach to taxation of

---

activity, if reasonable: [¶] (a) Separate accounting; [¶] (b) The exclusion of any one or more
of the factors; [¶] (c) The inclusion of one or more additional factors which will fairly
represent the taxpayer's business activity in this state; or [¶] (d) The employment of any other
method to effectuate an equitable allocation and apportionment of the taxpayer's income."

[3]SCA's opening brief cites our decision in *Barclay's Bank International Ltd.* v. *Franchise
Tax Bd.* (1990) 232 Cal.App.3d 1187 [275 Cal.Rptr. 626] review granted February 28, 1991
(S019064), holding the unitary tax method of WWCR, as applied to foreign-based unitary
groups, is unconstitutional under the foreign commerce clause of the United States Constitu-
tion. However, after SCA filed its brief, the California Supreme Court on February 28, 1991,
granted review in that case.

We also note that, effective 1988, new legislation allows qualified taxpayers to elect a
"water's edge" method for determining taxable income as an alternative to the WWCR
method. (§ 25110 et seq.; Stats. 1986, ch. 660, § 6, p. 2213 operative Jan. 1, 1988.) The new
legislation is not at issue in this case.

[4]*Container Corp.* v. *Franchise Tax Bd.* (1983) 463 U.S. 159 [77 L.Ed.2d 545, 103 S.Ct.
2933].

corporate groups with non-United States parent companies; (2) whether the business of the local company, i.e., SCA, and the business of its foreign affiliates constitute a unitary business; and (3) assuming a unitary business and the constitutionality of the unitary business approach, whether the figures used by FTB correctly represented the tax base properly allocable to California.

SCA was willing to bind itself to the first legislative or judicial decision on the constitutional issue and to stipulate, for purposes of the appeal, to being a unitary business. However, it wanted to leave open the third issue, so that in the event FTB's tax approach was upheld, SCA could challenge FTB's calculations, which were based on figures taken from Moody's OTC Industrial Manual.

SBE informed SCA that FTB had objected to the continued deferral of the cases, because decision on the constitutional issues in the near future was remote, and facts relating to calculations tend to become lost or otherwise unavailable over time. Consequently, SBE set a date for filing of memoranda.

In April 1985, SCA withdrew its fact-based claims, stating in part: "[SCA] has decided not to contest the issues of whether its business constituted a unitary business together with that of its corporate parent, Shiseido Co., Ltd. of Tokyo, Japan and whether the amounts allocated and apportioned to California represent a proper allocation and apportionment of the tax base of the business to California for the years before [SBE] at this time. [¶] The only issue remaining is the issue of whether the State of California has the legal right under the applicable provisions of the United States Constitution to impose the unitary basis of taxation on corporations incorporated in one of the United States, which have a non-United States parent company by bringing into the tax base the financial status and results of that non-United States parent company. That issue, as we both agree, is one which is beyond the jurisdiction of [SBE] under Section 3.5 of Article III of the Constitution of the State of California.[5] [¶] Accordingly, [SCA] has decided not to file a memorandum or oppose the entry of a decision by

---

[5]California Constitution, article III, section 3.5, adopted in 1978, provides: "An administrative agency, including an administrative agency created by the Constitution or an initiative statute, has no power: [¶] (a) To declare a statute unenforceable, or refuse to enforce a statute, on the basis of it being unconstitutional unless an appellate court has made a determination that such statute is unconstitutional; [¶] (b) To declare a statute unconstitutional; [¶] (c) To declare a statute unenforceable, or to refuse to enforce a statute on the basis that federal law or federal regulations prohibit the enforcement of such statute unless an appellate court has made a determination that the enforcement of such statute is prohibited by federal law or federal regulations."

[SBE] assessing additional franchise tax for the years in question as proposed by [FTB], subject to the reservation of its rights to pursue in the appropriate forum its claims under the United States Constitution as indicated above."

SBE sent a copy of SCA's April 1985 letter to FTB. In June 1985, SBE entered its decision sustaining FTB action on the protest against the proposed assessments and stating in part: "[SCA]'s decision not to contest the issues of whether [its] business constituted a unitary business with that of its corporate parent [], and whether the amounts allocated and apportioned to California represent a proper allocation and apportionment of the tax base of the business to California for the years at issue, left only a constitutional issue before the Board. The Board determined that section 3.5 of Article III of the California Constitution precludes it from deciding the constitutional issue."

In November 1985, SCA paid the tax and interest. The checkstubs and transmittal letter stated: "Paid under protest." Counsel for SCA later declared it had been his opinion, based on unspecified FTB public pronouncements and an unspecified conversation with an FTB director, that filing a claim for refund would be a futile act. According to a later statement by an FTB director, "The ordinary practice of the [FTB] upon receipt of such correspondence is to note its receipt and route it to the Claims Section for review. A clerk in the Claims Section refers it to an auditor for determination as to whether a valid claim has been filed. In our normal practice, these statements are not viewed as a valid claim. However, an inquiry would normally be sent to the taxpayer querying whether a claim was intended and indicating that a valid claim was not filed because no grounds were specified as to why a refund should be allowed. A reasonable opportunity is then provided to perfect such documents to a claim for refund. We have no evidence that any of these steps were undertaken in this case."

In January 1986, SCA filed a verified complaint, limiting the alleged ground for refund to its claim that the application of WWCR to a foreign parent unitary business violated the due process and commerce clauses of the United States Constitution, the laws of the United States, and the Treaty of Friendship, Commerce and Navigation between the United States and Japan.

FTB's original answer to the complaint, filed in March 1986, admitted the complaint's allegation that SCA had timely exhausted all administrative remedies.

The parties obtained stipulations of fact used in similar litigation, then spent the next two years negotiating a set of stipulated facts to submit the case for judicial decision.

During the course of preparing the stipulation, FTB's counsel discovered in January 1989 that his file did not contain a postpayment refund claim document sufficient to support FTB's admission that SCA had exhausted all administrative remedies. FTB served discovery upon SCA designed to establish that SCA had not filed a claim for refund after payment of the tax and before filing the court action. When asked to produce "Each and every document comprising the claims for refund of California [FTB] by [SCA] for the years ending November of 1970, 1971, 1972, 1973, and 1974, or any of said years," SCA's attorney responded in March 1989 that "SCA has no such documents in its possession." In May 1989, SCA objected to further discovery on the ground that "The subject matter of the request is not relevant and cannot lead to the discovery of any relevant evidence. By reason of admissions in the Answer to Complaint, the issue of exhaustion of administrative remedies has been removed from this case."

FTB successfully moved to compel discovery, the trial court concluding in June 1989 that exhaustion of remedies is jurisdictional and may be raised at any time.

In June 1989, FTB moved to amend its answer, on the grounds of inadvertence and mistake. SCA opposed the motion on the grounds that (1) FTB's delay in raising the failure to file a refund claim was prejudicial, because SCA would have had time to file a formal claim had FTB's original answer denied the allegation of exhaustion of administrative remedies; (2) FTB failed to show any mistake justifying amendment; and (3) FTB's delay in filing the motion to amend was due to a lack of diligence. The trial court granted the motion.

Also in June 1989, SCA filed its "perfected" claim for refund, which referred to and incorporated the prior communications regarding SCA's constitutional claim and did not raise any new issues.

In September 1989, FTB filed a motion for summary judgment on the grounds that (1) SCA had not filed a timely claim for refund; (2) a refund claim is a jurisdictional prerequisite to a lawsuit; and (3) the failure to file a claim is not subject to exceptions by reason of waiver or estoppel. SCA opposed the summary judgment motion on the grounds that (1) its conduct sufficiently comprised an informal claim, which tolled the limitations period until the 1989 filing of the formal claim, and (2) FTB should be estopped

by its original answer admitting that administrative remedies had been exhausted.

In December 1989, the trial court granted FTB's motion for summary judgment. The order states in part: "There is no triable issue of material fact re plaintiff's failure to file a refund claim. Also, estoppel is not applicable. []"

SCA appealed the summary judgment and in February 1990 filed the second lawsuit, which referred to the first lawsuit and sought the same relief, but in reliance on the 1989 refund claim.

In May 1990, FTB moved for judgment on the pleadings. In granting the motion, the trial court ruled that (1) the June 1989 refund claim was untimely; (2) SCA's November 1985 letter and checkstubs "paid under protest" did not state reasons for a refund and could not be considered a request for refund; (3) FTB could not be estopped from denying that SCA had exhausted its administrative remedies, and (4) SCA could not rely on the doctrine of equitable tolling of the time within which to file a refund claim because it was simply another form of estoppel.

SCA appeals from the judgments in both actions.

## DISCUSSION

I. *An Administrative Claim for Tax Refund Was a Jurisdictional Prerequisite to the Lawsuit*

### A. *The Applicable Procedure*

■ In order to challenge a state franchise tax, the taxpayer must first pay the tax, then follow statutory procedures for recovery. Thus, California Constitution, article XIII, section 32, (hereafter article XIII, section 32) provides: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, *in such manner as may be provided by the Legislature.*" (Italics added.)

The state Constitution also provides that "The Legislature shall pass all laws necessary to carry out the provisions of this article" (Cal. Const., art. XIII, § 33) and that "Suits may be brought against the state in such manner and in such courts as shall be directed by law" (Cal. Const., art. III, § 5).

Pursuant to this constitutional authority, the Legislature has provided the procedures for suits for franchise tax refunds in sections 26101 through 26107.

Section 26102 provides: "Except as provided in Section 26103a [FTB failure to act on refund claim], after payment of the tax and denial by [FTB] of a claim for refund, any taxpayer claiming that the tax computed and assessed against it under this part is void in whole or in part may bring an action, upon the grounds set forth in its claim for refund, against [FTB] for the recovery of the whole or any part of the amount paid."

Section 26103 provides: "The action provided by Section 26102 shall be filed within four years from the last date prescribed for filing the return or within one year from the date the tax was paid, or within 90 days after (a) notice of action by [FTB] upon any claim for refund, or (b) notice of action by [SBE] on an appeal from the action of [FTB] on a claim for refund, whichever period expires the later."

Section 26103b states: "Failure to begin an action within the time specified in this article shall be a bar against the recovery of taxes."

Section 26073 provides: "No credit or refund shall be allowed or made after four years from the last day prescribed for filing the return or after one year from the date of the overpayment, whichever period expires the later, unless before the expiration of the period a claim therefor is filed by the taxpayer, or unless before the expiration of the period [FTB] allowed a credit, made a refund, mailed a notice of proposed overpayment on a preprinted form prescribed by [FTB], or certified the overpayment to the State Board of Control for approval of the refunding thereof."

Section 26074, at the time in question, provided: "Every claim for refund shall be in writing and state the specific grounds upon which it is founded."[6]

B. *SCA's Constitutional Claim Is Not Exempt From the Refund Claim Filing Requirement*

SCA contends it "exhausted its administrative remedies by its [pre-payment] protest to FTB and appeal to SBE, and was not required to file a formal post-payment claim with FTB, because FTB was precluded by article

---

[6]A 1986 amendment, effective September 22, 1986, requires that the claim be signed by the taxpayer or the taxpayer's authorized representative, and adds provisions relating to claims filed on behalf of a class of taxpayers. (Stats. 1986, ch. 931, § 6, p. 3226.)

III, section 3.5 of the California Constitution [footnote 5, *ante*] and SBE's decision from considering or granting relief based on SCA's claim after SCA had limited the claim to the issue of whether WWCR violated the United States Constitution." We disagree.

The trial court correctly relied on *Patane* v. *Kiddoo* (1985) 167 Cal.App.3d 1207 [214 Cal.Rptr. 9], in which we held that the constitutional source of legislative power to control tax refund suits required strict adherence to the administrative procedures set forth by the Legislature before a court action could be filed. In *Patane*, the taxpayer instituted an action for refund of taxes which he claimed were illegally assessed and collected by the Employment Development Department as unemployment insurance contributions. The taxpayer had protested the assessment on the ground the share farmers he hired were independent contractors rather than employees. An administrative law judge agreed, but the tax assessment was reinstated upon the department's appeal to the Unemployment Insurance Appeals Board. The taxpayer paid the tax, then filed a claim for refund, which was denied. (*Id.* at p. 1210.) The taxpayer did not complete the administrative appeal process required by the Unemployment Insurance Code. In affirming summary judgment in favor of the department, we said: "Because article XIII, section 32, of the Constitution permits tax refund suits only 'in such manner as may be provided by the Legislature,' plaintiff's failure to satisfy a statutory condition to suit is fatal to his action . . . ." (*Id.* at pp. 1213-1214.)

The taxpayer in *Patane* argued he should be excused from the exhaustion requirement, because any appeal would inevitably have been decided adversely to him in light of the board's previous determination of the same issues in the department's successful appeal from the prior granting of the taxpayer's petition for reassessment. (167 Cal.App.3d at p. 1214.) We rejected that argument and held as follows:

"The doctrine of exhaustion of administrative remedies was evolved by the courts to promote comity between coequal branches of government and to relieve overburdened courts from the need to deal with cases where effective administrative remedies are available. (*Bozaich* v. *State of California* (1973) 32 Cal.App.3d 688, 698 [108 Cal.Rptr. 392].) The judicially developed rule and, perforce, its exceptions, have no application to an action to recover a tax paid. Although exhaustion of administrative remedies is prerequisite to such an action, it is compelled not by the judicially created doctrine of comity and convenience but by the constitutional grant of power to the Legislature to prescribe the manner of proceeding in such cases. [Unemployment Insurance Code sections] implement the constitutional provision and impose as a condition to the maintenance of an action to recover

unemployment insurance taxes the exhaustion of administrative remedies. We are not at liberty to alter the constitutionally authorized process by engrafting onto it exceptions borrowed from the judicially fashioned doctrine of exhaustion of administrative remedies. The authority to make such changes is confided in the Legislature by article XIII, section 32, of the Constitution, a provision which, as we have recently been reminded by our high court, 'means what it says.' (*Pacific Gas & Electric Co. v. State Bd. of Equalization* (1980) 27 Cal.3d 277, 284 [165 Cal.Rptr. 122, 611 P.2d 463].)" (*Patane, supra,* 167 Cal. App.3d at p. 1214.)

SCA contends *Patane* is distinguishable because here article III, section 3.5 of the state Constitution (fn. 5, *ante*) divested FTB of jurisdiction to grant SCA relief by declaring the taxing statutes unconstitutional.

This argument is unmeritorious. As we pointed out in *Patane*, we are without authority to alter the statutory procedures for tax refunds enacted by the Legislature pursuant to the state constitutional command of article XIII, section 32. SCA has made no direct federal constitutional attack on those statutes but, in any event, the claim-of-refund statutes have a rational basis. The claim of refund, filed in advance of litigation (§ 26102), provides the state with official notice that a taxpayer will make a claim for moneys paid to the treasury. Because the refund claim must state "the specific grounds upon which it is founded" (§ 26074), the claim of refund allows the state to evaluate the merits of the taxpayer's claim and to plan fiscal policy accordingly. This salutary purpose of a claim of refund exists even though FTB is without power to adjudicate the refund claim in the taxpayer's favor. We therefore conclude SCA was obligated to follow statutory procedures requiring that a claim for refund be filed and denied in advance of litigation. (*Patane, supra,* 167 Cal.App.3d at p. 1214.)[7]

SCA cites our prior decisions in *Southern Pacific Transportation Co.* v. *State Bd. of Equalization* (1987) 191 Cal.App.3d 938 [237 Cal.Rptr. 191] and *Duffy* v. *State Bd. of Equalization* (1984) 152 Cal.App.3d 1156 [199 Cal.Rptr. 886]. In *Southern Pacific*, valuation of the taxpayer's property was at issue. Although six separate methods of valuation (plus their combinations) were potentially at issue in the case, the taxpayer was given no notice of the method or methods used by the Board. We concluded that since the taxpayer was given no notice of the method(s) used, the taxpayer did not fail to exhaust administrative remedies by failing to challenge some of the

---

[7]Because we arrive at this conclusion for the reasons stated, we have no occasion to consider FTB's argument that exhaustion of administrative remedies was appropriate to make a record for judicial review. (See *County of Contra Costa* v. *State of California* (1986) 177 Cal.App.3d 62, 75, fn. 8 [222 Cal.Rptr. 750].)

methods before the Board. (*Southern Pacific, supra,* 191 Cal.App.3d at p. 945, fn. 3.)

In *Duffy,* the taxpayer was a tailor who performed initial alterations on clothing bought elsewhere. He challenged a regulation specifying tax was due on alterations to "new clothing." He claimed none of the clothing brought to his shop was "new." We concluded the taxpayer did not fail to exhaust his administrative remedies by refusing to provide business records and by refusing to cooperate in an experiment suggested by the Board, because the Board's requests were irrelevant to the taxpayer's "distilled contentions of law" that none of his alterations were done on "new clothing." (152 Cal.App.3d at p. 1163.)

Unlike this case, neither *Southern Pacific* nor *Duffy* represented an attempt by the taxpayer to evade any statutory procedure enacted by the Legislature pursuant to constitutional command. Rather, each case concerned the way the existing administrative process should accommodate issues framed by the taxpayer's challenge. The cases are therefore inapposite.

SCA argues its case is analogous to *Park 'N Fly of San Francisco, Inc.* v. *City of South San Francisco* (1987) 188 Cal.App.3d 1201 188 Cal.App.3d 1201 [234 Cal.Rptr. 23]. That case involved a local ordinance imposing a business license tax on operators of commercial parking facilities. The appellate court held the taxpayer's failure to exhaust administrative remedies on the issue of its classification as a commercial parking facility precluded its challenging that classification on appeal. (*Id.* at pp. 1207-1208.) The court remarked, "The exhaustion doctrine does not, however, preclude consideration of appellant's constitutional objections to the ordinance, which provides the taxpayer with no mechanism either for challenging its essential validity or raising constitutional questions. Where no forum or administrative remedy is afforded for the issues raised, recourse to the local administrative agency is not required before initiation of court action. . . ." (*Id.* at pp. 1208-1209.)

Because *Park 'N Fly* involved a local ordinance and local agencies, the constitutional command of article XIII, section 32 was not at issue. Article XIII, section 32 applies only to actions against the state. (*Pacific Gas & Electric Co.* v. *State Bd. of Equalization* (1980) 27 Cal.3d 277, 281, fn. 6 [165 Cal.Rptr. 122, 611 P.2d 463]; *A&M Records, Inc.* v. *State Bd. of Equalization* (1988) 204 Cal.App.3d 358, 369 [250 Cal.Rptr. 915].) Because *Park 'N Fly,* like *Southern Pacific* and *Duffy,* involved no transgression of constitutionally mandated statutes, the case is inapplicable here.

SCA also cites *Pacific Motor Transport Co.* v. *State Bd. of Equalization* (1972) 28 Cal.App.3d 230 [104 Cal.Rptr. 558] as supposedly recognizing an exception to the claim filing requirement where the taxpayer challenges the validity of the tax. There, the taxpayers brought an action to determine the validity of, and for a declaration of their rights and duties, under a tax regulation. The action was brought under Government Code section 11440, providing for judicial declaration as to the validity of administrative regulations. The appellate court reconciled that statute with the applicable Revenue and Taxation Code prohibition against judicial interference with tax collection by holding the taxpayers could obtain a judicial declaration as to the validity of the regulation but could not obtain the other relief requested, i.e., a declaration of the regulation's applicability to them or of their resulting tax liability. (28 Cal.App.3d at pp. 234, 236.) Here, SCA's action was for recovery of taxes under section 26102. It sought a refund, not a mere declaration of validity; and it challenged a statute, not a regulation. Thus, *Pacific Motor* does not apply to this case.

### C. *No Sufficient Claim Was Filed*

In this case, SCA was required to file a refund claim, specifying grounds for the claim, by November 1986, one year after payment of the taxes. (§§ 26073-26074.) SCA argues a sufficient refund claim can be pieced together by considering (1) its prepayment protest and appeal, (2) its writing "paid under protest" on its payment, and (3) its filing of the first lawsuit within the one year limitations period for filing the administrative claim. According to SCA, these factors together constituted at least an informal claim, which it "perfected" by filing its formal claim in 1989.

SCA's piecemeal approach does not work. First, the prepayment protest and appeal cannot be considered a claim for refund. Contrary to SCA's assertion, the refund claim must be filed *after* payment of the tax (§ 26102). A prepayment protest or appeal is treated as a refund claim only if the tax is paid before administrative action on the protest or appeal. Thus, section 26078 provides: "If, with or after filing a protest or an appeal to the board, a taxpayer pays the tax protested *before* [FTB] acts upon the protest or the board on the appeal, the protest or appeal shall be treated as a claim for refund or an appeal from the denial of a claim for refund filed under this article." (Italics added.) And under section 26079, "A refund claim upon which action has become final is not thereafter a refund claim except to the extent allowed."

Here, the SBE appeal was final July 25, 1985, 30 days after the decision. (Cal. Code Regs., tit. 18, § 5037.) The tax was paid in November 1985.

Since the tax was paid after the protest and appeal were final, the protest and appeal proceedings cannot be considered a claim for refund.

SCA misreads *Newman* v. *Franchise Tax Bd.* (1989) 208 Cal.App.3d 972 [256 Cal.Rptr. 503] as holding that a prepayment protest letter may constitute a refund claim. The letter at issue in *Newman,* though entitled "protest," was a *post*payment communication, in which the taxpayers asserted they had overreported income on their original return for the year in question. (*Id.* at p. 979.)

Similarly, SCA incorrectly cites *Wallace Berrie & Co.* v. *State Bd. of Equalization* (1985) 40 Cal.3d 60 [219 Cal.Rptr. 142, 707 P.2d 204], as construing prepayment correspondence to constitute an informal claim where the board understands the taxpayer is seeking a refund. In that case, however, a refund claim had been filed. (*Id.* at p. 66, fn. 2.) In commenting on the question whether a particular issue had been raised in the claim, our Supreme Court found the issue had been at least indirectly raised, and the board had litigated the issue "head on" during trial. (*Ibid.*) Thus, the board's conduct supported the conclusion that the issue had been raised in the refund claim. *Wallace Berrie* has no application to this case, where there was no refund claim.

We conclude SCA's prepayment protest and appeal do not constitute a refund claim.

SCA wrote "paid under protest" on its payment. However, these words do not constitute a valid refund claim, since they do not demand a refund or specify grounds for a refund. (§ 26074; *Mercury Casualty Co.* v. *State Bd. of Equalization* (1986) 179 Cal.App.3d 34, 40 [224 Cal.Rptr. 781].) Nor does FTB's knowledge of the circumstances surrounding the claim excuse compliance with the refund claim requirement. " 'It is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim. Such knowledge—standing alone—constitutes neither substantial compliance nor basis for estoppel. [Citations.]' " (*Mercury Casualty Co., supra,* at p. 40.)

We therefore reject SCA's contention that the prepayment proceedings, followed by payment "under protest," satisfied the statutory refund claim filing requirements. (179 Cal.App.3d at p. 40.)

SCA's third asserted claim component—the filing of the lawsuit—adds nothing to the analysis. As FTB puts it, the complaint "cannot constitute the document which is prerequisite to its existence." We will not consider the

complaint as supplying the grounds omitted from the payment "under protest." To do so would contravene the Legislature's command, in section 26102, that a legal action may be brought only after denial of a claim for refund.[8]

SCA relies on FTB Legal Ruling 386 (Cal. Tax Rptr. (CCH Transfer Binder 1971-1978) 205-319 (Aug. 25, 1975)) which provides in pertinent part as follows: "If it is clear that the taxpayer seeks a refund, but that the refund request lacks sufficient specificity to apprise the Franchise Tax Board of the exact basis of the claim, the refund request is considered an 'informal' claim for refund (see *Clement* v. *United States,* 472 Fed.2d 776 (1973); *United States* v. *Kales,* 314 U.S. 186, 86 Law.Ed. 132, 62 Sup.Ct. (1941)). Informal claims toll the statute of limitations. . . . [If an] informal claim is substantiated by a later amendment which refers to the defective claim (*Appeal of Clarence L. and A. Lois Morey, supra*; *Tobin* v. *Tomlinson,* 310 Fed.2d 648 (1962)) and which is limited to clarifying the original grounds rather than adding new ones (*Bear Valley Mutual Water Company* v. *Riddell,* 493 Fed.2d 948 (1974); *Sappington* v. *United States,* 408 Fed.2d 817 (1969)), the taxpayer [can] . . . institute a legal action (Revenue and Taxation Code Sections 19082, 26102)."

This ruling may well provide guidance for handling refund claims that inartfully specify the specific ground for refund. But nothing in this ruling purports to authorize as valid a refund claim that fails to meet the essential statutory criteria. Indeed, it goes without saying that FTB has no such power. Here, as we have recounted, SCA's purported piecemeal claim for refund failed to satisfy the applicable statutes in several respects. SCA cannot avoid these statutory shortcomings by characterizing its actions as an "informal claim for refund."

SCA also cites various federal cases that have construed claims for refund in favor of the taxpayer under federal tax laws.[9]

---

[8]Nor can the complaint in the first lawsuit constitute an informal claim for purposes of the second lawsuit. Even assuming for the sake of argument the complaint in the first action could be regarded as an informal claim for the second lawsuit, then FTB's answer to the complaint in the first lawsuit, filed in March 1986 and denying that SCA was entitled to a refund, must be regarded as a denial of that claim. Hence, the filing of the second lawsuit some four years later was untimely. (§ 26102.)

[9]Notably 26 United States Code section 7422(a) which provides in pertinent part: "No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof."

The regulations of the Secretary referred to in section 7422(a) are set forth in Treasury Regulation section (26 C.F.R. § 301.6402-2(b) (1991)), which provides:

Thus, in *United States* v. *Kales* (1941) 314 U.S. 186 [86 L.Ed. 132, 62 S.Ct. 214] the taxpayer sent a letter of "protest" to the Commissioner detailing the legal bases upon which the taxpayer "will claim the right to a refund." The Supreme Court concluded, "Such a use of the future tense in stating a claim may, with due regard to the circumstances of making it, rightly be taken as an assertion of a present right. [Citations.]" (*Id.* at p. 196 [86 L.Ed. at p. 139].) The letter of protest at issue in *Kales* is distinguishable from SCA's payment under protest in this case because the *Kales* protest (a) detailed the legal basis for the claim and (b) stated a refund was sought. *Kales* does not aid SCA.

In *American Radiator & Standard San. Corp.* v. *United States* (1963) 318 F.2d 915 [162 Ct. Cl. 106], the court concluded the legal basis for a tax refund claim was learned by an agent of Internal Revenue Service when he audited the taxpayer's tax returns. (*Id.* at p. 921.) We cannot reconcile *American Radiator* with the applicable California statute, section 26074, which expressly requires a refund claim to be in writing and to state the specific grounds upon which it is founded. We therefore decline to follow *American Radiator* and will follow *Mercury Casualty Co.* v. *State Bd. of Equalization, supra,* 179 Cal.App.3d at page 40 on this point.

Similarly, in *Newton* v. *United States* (Ct. Claims 1958) 163 F.Supp. 614, the court concluded a valid informal claim for refund was made prior to the time the tax was paid. (*Id.* at p. 619.) However, as we have explained, the applicable California statutes plainly require that the tax be paid before a claim for refund may be filed. (§§ 26078, 26102.)

In *Night Hawk Leasing Co.* v. *United States* (1937) 18 F.Supp. 938 [84 Ct. Cl. 596], the court treated as a valid claim for refund the following notation on the back of the taxpayer's check: " 'This check is accepted as paid under protest pending final decision of the higher courts.' " (P. 940.) This notation is arguably distinguishable from SCA's "paid under protest" notation in that the *Night Hawk* notation referred to litigation from which the legal basis of the taxpayer's claim could be ascertained. However, to the extent the case suggests that an unadorned payment under protest (such as that submitted by SCA) may satisfy the requirements of section 26074, we

---

"No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. The statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury. A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit."

respectfully decline to follow it and will continue to follow *Mercury Casualty Co.* v. *State Bd. of Equalization, supra,* 179 Cal.App.3d at page 40.

Finally, we are mindful of the effect of our decision on the administration of the tax laws. The applicable statutes requiring filing of a claim for refund are clear and straightforward. The filing of a claim for refund is "a simple and unburdensome act." (179 Cal.App.3d at p. 41.) We are unwilling to construe the simple, straightforward statutory requirements in ways that would leave tax authorities in doubt as to whether refund claims have been filed and promote undesirable litigation.

We conclude SCA's tax refund suit is barred for failure to exhaust constitutionally compelled administrative remedies. (179 Cal.App.3d at pp. 40-41; *Patane* v. *Kiddoo, supra,* 167 Cal.App.3d at pp. 1213-1214.)

II.-IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgments are affirmed.

Puglia, P. J., and Marler, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 20, 1992.

---

*See footnote, *ante,* page 478.