Filed 3/7/13  D.R. Systems v. Cal. State Bd. of Equalization CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| D.R. SYSTEMS, INC., | D060856 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2009-00094087-CU-MC-CTL) |
| STATE OF CALIFORNIA; STATE BOARD OF EQUALIZATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego, Lisa Foster, Judge. Reversed.

Plaintiff and appellant D.R. Systems, Inc. appeals from a summary judgment in favor of defendant and respondent State Board of Equalization (Board) on plaintiff's second amended complaint for a refund of sales and use tax.  On the parties' cross-motions, the trial court granted summary judgment in Board's favor, ruling plaintiff had not made a timely or valid administrative claim for refund.  On appeal, plaintiff contends

that a January 7, 2005 letter, alone or in conjunction with other communications to Board, constituted a timely claim for refund during the relevant time period as defined by Revenue and Taxation Code[1] section 6904 and Board is equitably estopped from claiming that section 6904 was not satisfied.  Alternatively, plaintiff contends the sufficiency of its January 7, 2005 letter and other communications, as well as application of equitable estoppel, are triable issues of material fact precluding summary judgment.

On this record, Board is not entitled to summary judgment because there are triable issues of material fact as to whether Board should be equitably estopped from raising plaintiff's failure to exhaust administrative requirements as a defense. Accordingly, we reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

We set out the undisputed fact from the parties' separate statements and other unchallenged evidence presented in Board's motion for summary judgment and plaintiff's cross motion for summary judgment/summary adjudication.  (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 843; *Ragland v. U.S. Bank Nat. Assn.* (2012) 209 Cal.App.4th 182, 197.)  We state other facts and draw reasonable inferences in the light most favorable to plaintiff.  (*Conroy v. Regents of University of Cal.* (2009) 45 Cal.4th 1244, 1249-1250; *Ragland*, at p. 197.)

---

[1]     Statutory references are to the Revenue and Taxation Code unless otherwise indicated.

2

Plaintiff is a San Diego company that sells computers, software and services relating to the computer storage of X-rays and other medical digital images. In November 2002 and March 2003, Board notified plaintiff that it had overpaid its sales and use taxes for the second and third quarters of 2002 (the period of April 1, 2002, to September 30, 2002) by, respectively, $17,382 and $172,878. Board advised plaintiff it could take credit for the overpayments against future tax liability, and set out two ways for it to do so.

In August 2003, Board adjusted the overpayments from 2002 against tax liability in November 2002 and January 2003, applying credits on plaintiff's fourth quarter 2002 and first quarter 2003 returns (respectively approximately $68,000 and $46,000).

In the third quarter of 2004, plaintiff filed a return taking a $59,232.46 additional credit for overpayments made in the second and third quarters of 2002.[2] In November 2004, Board issued a statement to plaintiff indicating a past due amount and assessing penalties and interest based on plaintiff's third quarter 2004 return.

In December 2004, Zuckerman sent Board a memorandum with the subject line, "Self Audit of Prior Year Revenues." (Some capitalization omitted.) The memo states in part, "During the first part of July 2004, we showed a balance due to us from the state for sales tax." Zuckerman wrote that the company had reconciled its revenue and sales tax

---

[2]    Plaintiff's third quarter 2004 return does not reflect the $59,232 figure. According to plaintiff's chief financial officer Charles Zuckerman, plaintiff filed this return with a "blank space on line 22 . . . where a prepayment amount would usually be placed." Arguments of counsel below confirmed plaintiff took its credit of $59,232.46 by omitting a prepayment in the third quarter of 2004.

3

and had backup to show the process they went through to "clean up the books." He asked that the penalties and interest be waived because the company was "working in good faith to clean up the prior years and current year accounting."

After sending this memo, Zuckerman spoke with a Board employee, Linda Osgood, who instructed him that the next step was for him to write a letter to Board under penalty of perjury explaining that there was a balance owed to D.R. Systems. Zuckerman resent the memo a few days later, handwriting the words, "These statements are made under penalty of perjury[.]"

At about that time, Zuckerman told Osgood that D.R. Systems had gone through its books from 2002 to the present and noticed errors committed by its prior controller; it had converted its accounting system from a tax basis to generally accepted accounting principles, which had resulted in a change in the allocation of taxable income by each quarter and thus all of its prior returns were inaccurate; there were significant overpayments starting in the second quarter of 2002 that resulted in a balance due D.R. Systems, Inc. from the Board; and the credit taken in the third quarter of 2004 was an offset of an overpayment determined to have been made starting in the second quarter of 2002 and rolled forward from the ensuing quarters.

In another conversation, Osgood told Zuckerman that he needed to add the phrase, "I declare under penalty of perjury . . . " to his memo. She did not direct him to file Board's "Claim for Refund or Credit" form (form BOE-101).

As a result of their conversations, on January 7, 2005, Zuckerman sent Board a memorandum almost identical to those sent the prior month. In its entirety, the

4

memorandum, again captioned, "Self Audit of Prior Year Revenues" (capitalization omitted), reads: "During the current year we have been performing a self-audit of revenue and sales tax. We reviewed the books from 2001 through 2003. During July 2004, we showed a large credit balance due to us from the state for sales tax. When we combined the prior year with the current year our credit balance changed. We are currently completely reconciled and we have the backup to show the process we went through to clean up the books. We would appreciate the consideration of the State in waiving penalties and interest since we were working in good faith to clean up the prior years and current year accounting. The prior Controller who worked here since the company's inception was not very good. I have been here just over a year and have now cleaned everything up. The actual sales tax activity for the month of July 2004 was [$]19,268.49. I declare under penalty of perjury that the statements I have made are true and accurate."

On February 8, 2005, Board responded to Zuckerman's letter, informing him it would relieve the penalties, but not the interest, for the third quarter of 2004.

In August 2005, Board sent an audit letter to plaintiff. Though Zuckerman was prepared to begin, the auditor did not actually contact him until November 2005. The Board's audit began in December 2005. In January 2006, Zuckerman filed a waiver of limitation form consenting to an extension of the time by which the Board could make a deficiency determination to July 31, 2006, for the period covering October 1, 2002, through March 31, 2003.

5

On May 12, 2006, Zuckerman filed a BOE-101 claim for refund form seeking a credit or refund of $649,464. In it, Zuckerman wrote: "Amended returns have been filed for the period of 4/1/2002 through 12/31/2005. The last audit period for DR Systems was through the period of 3/31/2002. This prior audit period of DR Systems from 1992 through 3/31/2002 did not catch the error of collecting sales tax on Service Contracts."[3]

In June 2006, Zuckerman filed an extension to his original waiver extending the time by which the Board could make a deficiency determination to October 31, 2006.

In early 2007, as a result of its audit, Board issued plaintiff a refund of over $390,300 in taxes and interest. However, Board advised plaintiff it had not filed a timely claim for refund with respect to its second and third quarter 2002 overpayments, and disallowed any refund for those overpayments. Plaintiff unsuccessfully participated in an administrative appeals process, as well as a hearing before the elected members of the Board.

In July 2009, plaintiff filed a complaint against Board seeking a refund of

---

[3]    The form contains a section in which the taxpayer is to describe what caused the overpayment. Plaintiff set forth the following statement: "A letter was written in January of 2005 describing the process of reconciling the prior periods from 2001 through 2003 and rolling the credit balances forward. It states that the credit balances are changing. This implies that the amount due to the State Board is changing and is an implied request for refund that was taken on the 3rd Quarter 2004 return. The letter also requests a waiver of penalties and interest. The second claim for refund relates to charging sales tax on service contracts. It has been determined that sales tax should not be charged and we would like to refund this money back to our customers. The third claim relates to incorrectly reporting sales occurring in the San Mateo District. This resulted in a determination letter of $908. This revenue should have been reported in the Santa Barbara District. The fourth relates to over reported sales and use tax erroneously reported by prior controller."

$283,410.80 in sales and use tax that was allegedly overpaid for the second and third quarters of 2002 (the period of April 1, 2002, to October 1, 2002). Plaintiff subsequently filed first and second amended complaints.

Board moved for summary judgment on grounds the court lacked jurisdiction over plaintiff's second amended complaint because plaintiff had not filed a timely claim for a refund under section 6932, and thus had not exhausted its administrative remedies before filing suit. It also argued the action was barred by the three-year statute of limitations of section 6902. It asserted as undisputed that the statute of limitations for the second and third quarters of 2002 ran on July 31, 2005, and October 31, 2005, respectively. Plaintiff filed its own cross-motion for summary judgment and alternatively summary adjudication on grounds its claims were not barred by the statute of limitations. It argued its letters dated December 8, 2004, and January 7, 2005, constituted a valid and timely claim for refund, and Board should be estopped from claiming otherwise.

In opposition to Board's motion, plaintiff argued it had properly exhausted its administrative remedies. It maintained the terms "credit" and "refund" were interchangeable, and the wording of its January 7, 2005 letter, which had requested a credit rather than a refund, sufficiently addressed the purpose of the claims statute. Plaintiff asked the court to interpret the claim for refund statutes equitably, and interpret its communications liberally so that the Board would offset any time-barred tax overpayment against plaintiff's future tax liabilities. It filed objections to Board's evidence.

Alternatively, plaintiff argued the court should conclude based on all of the communications that Board was on notice of plaintiff's claim that it was entitled to a refund. It maintained its January 7, 2005 letter, combined with Zuckerman's communications with Osgood and her later instructions to Zuckerman, sufficed to put Board on notice of its claim; that the wording of the January 7, 2005 letter did not determine its sufficiency, and any ambiguity in the requirements of section 6904 must be interpreted against the Board and in plaintiff's favor as the taxpayer. Plaintiff further argued Board should be estopped from asserting that plaintiff did not comply with the refund statutes.

Plaintiff submitted an opposing declaration from Zuckerman in which he stated that in preparing his January 7, 2005 letter he had followed Osgood's directions, and if she had directed him to file a BOE-101 form, he would have done so. Pointing to a tax, interest and penalty worksheet from Board, he pointed out that in July 2004, Board was still adjusting for the second quarter 2002 overpayments. He stated, "The [Board] was clearly aware that there were overpayments and adjustments were required." Zuckerman stated that his May 12, 2006 filing was done at the direction of a Board employee, and was timely for the second and third quarters of 2002.

Overruling plaintiff's objections, the court granted summary judgment in Board's favor. The court ruled it did not have jurisdiction over the subject matter of plaintiff's second amended complaint; that plaintiff had not exhausted its administrative remedies because it failed to file a timely and valid claim for refund. In particular, it ruled the January 7, 2005 letter did not request a tax refund or specify grounds for a refund. The

court stated: "[T]he January 7, 2005 letter does not provide sufficient notice to defendant [Board] that plaintiff is making a claim for refund for the periods at issue, April 1, 2002[,] through September 30, 2002[,] (2Q02 and 3Q02[).] The January 7, 2005 letter does not state that plaintiff is requesting a refund of taxes paid for the periods at issue. The January 7, 2005 letter does not state any specific grounds upon which the claim was founded. Therefore, the January 7, 2005 letter is an inadequate claim for a refund." Additionally, the court ruled that exhibits B, C, and D to the second amended complaint (Board's November 21, 2002 letter; March 3, 2003 letter; and Board's tax, interest, and penalty worksheet) either separately or read in conjunction with the January 7, 2005 letter, did not constitute a claim for refund, as none of the documents specified a grounds for refund or the period for which a refund was being sought. The court found the doctrine of equitable estoppel "inapplicable." It distinguished *J.H. McKnight Ranch, Inc. v. Franchise Tax Board* (2003) 110 Cal.App.4th 978 (*McKnight*) as factually inapposite, and ruled permitting plaintiff to ignore the statute of limitations in this case would be contrary to public policy. The court ruled plaintiff's cross-motion for summary judgment/adjudication was "moot."

Following an unsuccessful motion for reconsideration, plaintiff filed this appeal.

### DISCUSSION

#### I. *Summary Judgment Standards*

A "party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850, fn. omitted.)

9

A moving defendant has the initial burden of production entailing it to "present[] . . . 'evidence' " (*id*. at p. 850, citing Evid. Code, § 110) that would support a prima facie showing of the nonexistence of any triable issue of material fact; that " 'one or more elements of' the 'cause of action' in question 'cannot be established' or that 'there is a complete defense' thereto." (*Aguilar*, at p. 850; Code Civ. Proc., § 437c, subd. (p)(2).) A defendant moving for summary judgment on an affirmative defense must persuade the court there is no material fact for a reasonable trier of fact to find as to that defense. (*Aguilar*, at p. 850, fn. 11.) If this burden is met, the burden of production shifts to the opposing party to make a prima facie showing of a triable issue of material fact. (*Id*. at p. 850.)

On appeal from a summary judgment, we review the record de novo, considering all of the evidence presented by the parties except evidence properly excluded by the trial court. (*Merrill v. Navegar, Inc*. (2001) 26 Cal.4th 465, 476.) We view the evidence under the same principles applicable at the trial level, and because Board prevailed on the motions, we view the evidence in the light most favorable to plaintiff; we strictly construe Board's evidence and liberally construe plaintiff's, resolving doubts concerning the evidence in plaintiff's favor. (*Conroy v. Regents of University of Cal*., *supra*, 45 Cal.4th at pp. 1249-1250; *In re Martinez* (2012) 210 Cal.App.4th 800, 815.)

II. *Taxpayer Remedies for Contested Sales and Use Taxes*

Article XIII, section 32 of the California Constitution provides: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax

claimed to be illegal, an action may be maintained to recover the tax paid, with interest, *in such manner as may be provided by the Legislature*." (Italics added.)

The Legislature provides that before a taxpayer may file an action against the State to recover a sales tax already paid, he or she must first file a claim with the Board for a refund. (§§ 6932, 6901-6908; see *Preston v. State Bd. of Equalization* (2001) 25 Cal.4th 197, 206 (*Preston*).) Section 6932 states: "No suit or proceeding shall be maintained in any court for the recovery of any amount alleged to have been erroneously or illegally determined or collected unless a claim for refund or credit has been duly filed pursuant to Article 1 (commencing with Section 6901)."

The claim "shall be in writing and shall state the specific grounds upon which the claim is founded." (§ 6904, subd. (a); see *Preston*, 25 Cal.4th at p. 206.) In addition, a suit against the State, following the Board's action on the claim for refund, "must be based 'on the grounds set forth in the claim' for refund. (§ 6933.) It may not include issues '*not* raised in the claim.' " (*Preston*, at p. 206.) Thus, the claim frames and restricts the issues to be litigated. (*Ibid*; *King v. State Bd. of Equalization* (1972) 22 Cal.App.3d 1006, 1015.) Though a court is " 'without jurisdiction to consider grounds not set forth in the claim,' " it may consider any contentions "intertwined with contentions expressly raised in the refund claim . . . ." (*Preston*, at p. 206.)

The policy underlying section 6932, requiring a taxpayer to file a claim with the Board before commencing a tax refund lawsuit, is to give the Board an opportunity to correct any mistakes, thereby avoiding the cost of litigation and the consumption of judicial resources. (*Preston*, *supra*, 25 Cal.4th at p. 206.)

11

A taxpayer filing a return on other than an annual basis must file for a refund within three years from the last day of the month following the close of the quarterly period for which the overpayment was made. (§ 6902, subd. (a)(1).) The time period within which to file a claim for refund is jurisdictional; thus, if a taxpayer fails to exhaust all administrative refund procedures, the trial court is deprived of jurisdiction to order a refund of any overpaid taxes. (*Philips v. Ober Electric Co. v. State Bd. of Equalization* (1991) 231 Cal.App.3d 723, 728.)

III. *Plaintiff's Memoranda and Communications Were Insufficient as a Matter of Law to Put the Board on Notice of A Demand for Refund or Specific Grounds for a Refund*

Plaintiff contends that Zuckerman's January 7, 2005 letter, either alone or combined with Zuckerman's prior letters and conversation with Osgood, constitutes a timely claim for refund that put Board on notice of its claim, satisfying section 6904. Alternatively, it argues triable issues of material fact exist as to whether the statements in the January 7, 2005 letter constitute "specific grounds upon which the claim is founded" within the meaning of section 6904, and whether a claim was timely asserted. Plaintiff maintains that the issue presented for this court is not whether the grounds stated in the January 7, 2005 letter and others were sufficiently specific, but "whether the *sufficiency* of the specificity of the grounds stated *is* a triable issue of material fact." It argues the facts here are "highly analogous" to *McKnight*, *supra*, 110 Cal.App.4th 978, and that under *Newman v. Franchise Tax Bd.* (1989) 208 Cal.App.3d 972 (*Newman*), the nomenclature used in its January 7, 2005 letter does not determine its sufficiency.

12

A. *McKnight and Newman*

In *McKnight*, the Franchise Tax Board (FTB) audited the 1990 return of J.H. McKnight Ranch (Ranch), and assessed over $97,000 in additional state taxes after determining that a certain discharged debt was taxable income. (*McKnight*, *supra*, 110 Cal.App.4th at p. 982.) Ranch filed a protest of the assessment, contending the discharged amount was not taxable income under a legal doctrine known as the "contested liability doctrine." (*Id*. at p. 983.) After Ranch unsuccessfully attempted to resolve the dispute with the FTB's settlement bureau, it paid the disputed amount and filed an amended 1990 return and claim for a refund. (*Ibid*.) It then filed an action in superior court, after which the trial court reached a decision and entered a judgment in its favor awarding the overpaid taxes plus interest. (*Ibid*.)

On the FTB's appeal from the judgment, the FTB conceded the discharged debt was not taxable under the contested liability doctrine, and that Ranch did not owe the over $97,000 in taxes it had paid when it filed its amended 1990 return. (*McKnight*, *supra*, 110 Cal.App.4th at p. 985.) Rather, the FTB contended Ranch was procedurally barred from a refund because it failed to exhaust its administrative remedies under sections 19382 and 19322, the latter of which provides: "Every [administrative] claim for refund shall be in writing, shall be signed by the taxpayer or the taxpayer's authorized representative, and shall state the specific grounds upon which it is founded."

13

(*McKnight*, at p. 986.)[4]  Specifically, the FTB asserted that the statutes set forth a pleading requirement, requiring the taxpayer to plead a particular ground within the four corners of its filed refund claim.  (*Ibid*.)

The Court of Appeal disagreed.  It agreed with Ranch that the exhaustion statutes set out a notice requirement.  (*McKnight*, *supra*, 110 Cal.App.4th at p. 986.)  Addressing the Legislature's intent, it stated:  " 'The purpose of these statutory [exhaustion] requirements is to ensure that the Board receives sufficient notice of the claim and its basis.  [Citation.]  The Board then has an opportunity to correct any mistakes, thereby conserving judicial resources.  [Citation.]'  [Citation.]  Section 19322 'requires no particular form; the claim only must be in writing and state the grounds therefor.  Indeed, the purpose of the statute is to put the board on notice of a claim . . . .'  [Citation.]  [¶] Satisfaction of this goal—notice to the Board so that it may rectify mistakes and conserve judicial resources—does not hinge on whether a particular issue is recited expressly in the initial claim for refund.  If the Board has notice of the taxpayer's argument from whatever source during the course of resolving the claim for refund, it has the opportunity to reevaluate its position, reach the correct result, and obviate the need for a subsequent lawsuit.  We see no basis for construing the statutes setting out the administrative exhaustion requirement so as to ignore actual notice the Board may have

---

4      The *McKnight* court observed that the exhaustion statues for sales and use taxes and income tax were identical, and it treated authorities involving sales and use taxes such as *Preston*, *supra*, 25 Cal.4th 197 equally persuasive.  For the same reason, *McKnight*'s reasoning, though involving exhaustion under the income tax statutes, is equally applicable here.

had from sources other than the four corners of the initial claim."  (*McKnight*, at pp. 986-987, fn. omitted.)

McKnight suggested that these principles were applied by the California Supreme Court in *Wallace Berrie & Co. v. State Bd. of Equalization* (1985) 40 Cal.3d 60, as well as the Court of Appeal in *Jimmy Swaggart Ministries v. State Bd. of Equalization* (1988) 204 Cal.App.3d 1269.  In *Wallace Berrie*, the high court held that the exhaustion of administrative remedies doctrine did not prevent a taxpayer's challenge to the validity of a State Board of Equalization regulation in its refund claim.  Because the Board of Equalization in that case was aware of the issue as evidenced by the fact it addressed it on the merits at trial, the plaintiff had not failed to exhaust its administrative remedies, whether or not the particular challenge was actually raised in the refund claim.  (*McKnight*, *supra*, 110 Cal.App.4th at p. 987, discussing *Wallace Berrie*, 40 Cal.3d at p. 66, fn. 2.)  In *Jimmy Swaggart*, the Court of Appeal looked beyond just the initial claim and considered the entire record before the Board, including the Board's denial that any exemption applied and its staff analysis of the plaintiff's petition for redetermination, to hold the taxpayer in that case had not raised various constitutional claims in its claim for refund, in which it had asserted only a First Amendment argument.  (*Jimmy Swaggart*, 204 Cal.App.3d at pp. 1291-1292; see *McKnight*, at p. 987.)  The taxpayer's refund claim had read simply:  " 'California cannot constitutionally impose a sales tax.' "  (*Jimmy Swaggart*, at p. 1291.)

McKnight applied "longstanding policy" concerning refund claims:  " 'It has long been the policy of California courts to liberally construe claims for refund of taxes.  "In

recognition of the reality that many, if not most, applicants are laymen who would be denied hearings if formalized technical rules were followed, it has been the judicial policy of this state to construe such applications liberally in favor of the applicant. It has been stated that an application is adequate and 'the purpose of the statutory requirement is served if the board may know from said application "or have some reasonable means of ascertaining" therefrom what the claim of the applicant is, to the end that such claims may be investigated by the assessing authorities prior to the hearing.' " ' " (*McKnight*, *supra*, 110 Cal.App.4th at p. 988.)

In *McKnight*, the appellate court held that the evidence before the trial court revealed that the Board was aware of Ranch's contested liability argument; the court observed Ranch's initial claim for refund did not recite the doctrine as an express basis for refund of the tax, but indicated that it was challenging the denial of its original protest. (*McKnight*, *supra*, 110 Cal.App.4th at p. 988.) It pointed out a Board auditor had reviewed the protest hearing report that included Ranch's assertion of the contested liability doctrine (*id*. at pp. 988-989) and there was other evidence suggesting the auditor knew or soon learned that the contested liability doctrine was still at issue, including the testimony of one of Ranch's attorneys that he had discussed the " 'same things I discussed at the lower level' " with the auditor. (*Id*. at p. 989.) The claim for refund also indicated that Ranch was " 'protesting the [Board's] disallowance' " of its exclusion from income, "a statement which could be interpreted to incorporate by reference the panoply of arguments raised and rejected in the protest proceeding." (*Id*. at pp. 989-990.) According to the *McKnight* court, the subjective belief of the auditor was not dispositive;

16

the Board had received "notice of the relevant facts surrounding the claim and notice of a legal doctrine under which, indisputably, [Ranch] owed no tax. The Board's auditor thus had the opportunity to rectify the Board's mistakes in issuing the initial assessment and denying the subsequent protest." (*Id*. at p. 990.)

*Newman*, *supra*, 208 Cal.App.3d 972, involved an actor's claim for a refund of state income tax for three years (1975, 1976 and 1977) on the ground the tax on his income for a particular film was determined under an inappropriate formula. (*Id*. at pp. 975-976.) After a court trial on stipulated facts, the trial court determined the plaintiffs had given legally sufficient notice of their claim for refund for a portion of their 1975 taxes, rejecting the Board's position that no claim was properly filed or that the Board did not have statutory notice. (*Id*. at p. 976.)

On the Board's appeal, the appellate court held the plaintiff's May 14, 1982 letter constituted a claim for refund for the year 1975. (*Newman*, *supra*, 208 Cal.App.3d at p. 979-980.) It was undisputed that the date by which the plaintiffs were to file their claim for refund was June 15, 1982. (*Id*. at p. 979.) As described by the *Newman* court, the plaintiffs had filed a document on May 14, 1982 nominally entitled "protest." In part, the letter stated: " 'The notice of proposed assessment resulted from a recent Franchise Tax Board Examination. The Franchise Tax Board auditor raised questions regarding the California apportionment of the Newmans' film income but did not discuss many of the proposed adjustments prior to the issuance of his report. . . . [¶] "*The Sting*" Our position on income derived from "The Sting" is unchanged from prior years. The proper percentage of California income is 55.56 %. This is based on California work days over

17

total contract days. [¶] The 1976 and 1977 returns reported the proper amounts, however, the allowable portion of "Sting" income was overreported on the 1975 California tax return. The return reflected 83.30 % when only 55.56 % should have been reported.' " (*Newman*, at p. 979.)

Explaining that "[t]he sufficiency of a claim does not turn on the nomenclature used," the *Newman* court on these facts held the letter "clearly satisfie[d]" the requirements of the statutory requirement that the claim be in writing and state the grounds therefor, because it apprised the Board that the plaintiffs contended they had overreported their income in 1975. (*Newman*, *supra*, 208 Cal.App.3d at pp. 979-980.) It agreed that the plaintiffs' written statement regarding their position on the overpayment, and the Board's knowledge of their proposed allocation, qualified the May 14, 1982 document as a claim for refund. (*Id*. at p. 980.)

B. *Plaintiff's Representation That a Credit Balance was Due from the State, and Board's Awareness of the Background Circumstances, is Insufficient to Put the Board on Notice that Plaintiff Was Seeking a Refund for the Periods in Question*

Plaintiff argues that like the circumstances in *McKnight*, the dispute here arose over the legitimacy of the credit taken on plaintiff's third quarter 2004 return, after which its principal Zuckerman contacted the Board to explain the credit, received input from the Board employee on the contents of the claim letter, and resubmitted it. It asserts the wording Zuckerman used in the January 7, 2005 letter is not determinative, nor is the fact his memo omitted the words "claim for refund." Rather, plaintiff contends that under

18

*Newman*, *supra*, 208 Cal.App.3d 972, it need only " 'put [the Board] on notice that a right is being asserted with respect to an overpayment of tax.' "

*McKnight* and *Newman* are inapposite.  The plaintiffs in *Newman* plainly challenged the FTB's proposed assessment and described an apportionment formula they proposed should apply, which would permit the FTB to make a meaningful investigation and determination of the issues presented, so as to possibly rectify the situation.  And unlike *McKnight*, in which the Ranch timely protested an assessment based on a specific legal doctrine which (the FTB conceded) eliminated its tax liability and then filed a refund claim, plaintiff's January 7, 2005 report of a credit balance for overpayments made in the second and third quarters of 2002 did not provide any specific factual or legal basis to recover its overpayments other than a vague claim of "errors" committed by its prior controller.  Indeed, the main thrust of plaintiff's January 7, 2005 memo was a request that the Board waive interest and penalties assessed for plaintiff's past due payment in connection with its third quarter 2004 return.  It is undisputed that Board had already notified plaintiff of overpayments during the second and third quarters of 2002, for which plaintiff took credits in subsequent quarters.  There is no evidence suggesting, or from which a reasonable trier of fact may infer, that Board should have known or suspected that the overpayments plaintiff reported from 2002 in its January 7, 2005 memo were additional or any different from those already addressed by the Board.

We are not precluded from reaching this determination on motion for summary judgment, because when a question involves the interpretation of a statute and the legal meaning of a written instrument on undisputed evidence, the question is one of law

19

subject to de novo review.  (*Varshock v. California Dept. of Forestry and Fire Protection* (2011) 194 Cal.App.4th 635, 641 [interpretation of statutory language presents a pure question of law on which reviewing court exercises independent judgment]; *Tana v. Professionals Prototype I Ins. Co.* (1996) 47 Cal.App.4th 1612, 1616 ["Because the issue is one of law and exclusively dependent on an interpretation of writings, on appeal from an order granting summary judgment, we exercise de novo review"].)

*Shiseido Cosmetics (America) Ltd. v. Franchise Tax Bd.* (1991) 235 Cal.App.3d 478 and *Mercury Casualty Co. v. State Bd. of Equalization* (1986) 179 Cal.App.3d 34 compel our conclusion.  In *Mercury Casualty*, the appellate court held that checks were not valid claims for refund even though they contained the phrase, "Paid Under Protest Subject to Claim for Refund Not Subject to Gross Premiums Tax."  (*Mercury Casualty*, 179 Cal.App.3d at pp. 37, 38, some capitalization omitted.)  This language did not meet the provisions of the tax statute requiring such a claim to be " 'in writing and . . . state the specific grounds upon which it is founded.' "  (*Id*. at p. 39, quoting section 12979.)  The court further held, relying on *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, that a governmental entities' actual knowledge of the circumstances surrounding the claim was "no basis for dispensing with the claim." (*Mercury Casualty*, at p. 40.)

Likewise, in *Shiseido Cosmetics (America) Ltd. v. Franchise Tax Bd.*, *supra*, 235 Cal.App.3d 478, the words "paid under protest" written on a payment did not constitute a valid or timely request for refund.  There, the plaintiff cosmetics company (Shiseido), like plaintiff here, argued its refund claim could be pieced together by considering its prepayment protest and appeal, its having written "paid under protest" on its payment,

20

and its filing of the first lawsuit within the one-year limitations period for filing an administrative claim. (*Id*. at p. 491.) It relied on *Newman*, *supra*, 208 Cal.App.3d 972. The Court of Appeal rejected Shiseido's arguments, explaining the words, "paid under protest" do not constitute a valid refund claim, "since they do not demand a refund or specify grounds for a refund." (*Shiseido*, at p. 492.) The court relied upon *Mercury Casualty Co. v. State Bd. of Equalization*, *supra*, 179 Cal.App.3d 34 to hold the FTB's knowledge of circumstances surrounding the claim did not excuse compliance with the refund claim requirement. The *Shiseido* court explained: " ' "It is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim. Such knowledge—standing alone—constitutes neither substantial compliance nor basis for estoppel." ' " (*Shiseido*, 235 Cal.App.3d at p. 492, quoting *Mercury Casualty Co*., *supra*, at p. 40.)

The *Shiseido* court declined to apply federal tax authorities, observing that California's claim statutes are clear and straightforward and the filing of a refund claim was a simple and unburdensome act. (*Shiseido Cosmetics (America) Ltd. v. Franchise Tax Bd.*, *supra*, 235 Cal.App.3d at pp. 494-495.) The court was "unwilling to construe the simple, straightforward statutory requirements in ways that would leave tax authorities in doubt as to whether refund claims have been filed and promote undesirable litigation." (*Id*. at p. 495.)

In short, we conclude that neither plaintiff's December 2004 or January 2005 communications set out sufficiently *specific* legal or factual bases for a claim for a refund as a matter of law, and those communications, combined with Zuckerman's conversation

21

with Osgood which gave Osgood general information about the circumstances (i.e., plaintiff's self-audit, and its controller's errors) did not put Board on notice of, and permit it to reasonably investigate or rectify a claim for refund within the meaning of section 6904.

### IV. *Triable Issues of Material Fact Exist as to Equitable Estoppel*

Despite the foregoing conclusion, we nevertheless conclude the summary judgment should be reversed because plaintiff's evidence raises triable issues of material fact as to whether Board should be equitably estopped from relying on the administrative exhaustion requirements.

Plaintiff argues application of the doctrine of equitable estoppel is appropriate. It asserts the Board was "aware of the facts as relayed to the [Board]" via Zuckerman's December 8, 2004 and January 7, 2005 memoranda, plaintiff's third quarter 2004 tax return, and Zuckerman's conversations with Osgood. According to plaintiff: "The direction of Osgood that Zuckerman write a letter laying out the facts that lead [*sic*] to the taking of the credit and the existence of a credit due to DR Systems, and nothing more are, without dispute, direction that was relied upon and acted upon by Zuckerman. At the time, as it attends to procedural requirements surrounding the assertion of a claim for refund, Zuckerman was not aware of any other method for asserting a claim for refund. Zuckerman relied to his injury on the direction of Osgood."

On review of a summary judgment, we are to find issues requiring a trial, not resolve them. (*Millard v. Biosources, Inc.* (2007) 156 Cal.App.4th 1338, 1345.) The determination of equitable estoppel ordinarily is a question of fact. (*Platt Pacific, Inc. v.*

22

*Andelson* (1993) 6 Cal.4th 307, 319.) But when the relevant facts are undisputed and can support only one reasonable conclusion, the existence of an estoppel is a question of law. (*Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1315 (*Steinhart*); *Albers v. Los Angeles County* (1965) 62 Cal.2d 250, 266, limited on other grounds in *Belair v. Riverside County Flood Control Dist.* (1988) 47 Cal.3d 550, 558.)

"Equitable estoppel is a principle grounded in fundamental fairness, and ' " 'takes its life . . . from the equitable principle that no man [may] profit from his own wrongdoing in a court of justice.' " ' " (*County of San Diego v. Arzaga* (2007) 152 Cal.App.4th 1336, 1348, quoting *Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 383; see also *Steinhart*, *supra*, 47 Cal.4th at p. 1315 [doctrine is founded on concepts of equity and fair dealing].) It is based on the theory that a party who by his declarations or conduct misleads another to his prejudice should be estopped from obtaining the benefits of his misconduct. (*Cotta v. City and County of San Francisco* (2007) 157 Cal.App.4th 1550, 1567.) A valid claim for equitable estoppel generally requires four elements: " ' " '(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.' " ' " (*Honeywell v. Workers' Comp. Appeals Bd.* (2005) 35 Cal.4th 24, 37.)

Under these principles, "A defendant may be equitably estopped from asserting a statutory or contractual limitations period as a defense if the defendant's act or omission caused the plaintiff to refrain from filing a timely suit and the plaintiff's reliance on the

23

defendant's conduct was reasonable. [Citations.] The act or omission must constitute a misrepresentation or nondisclosure of a material *fact*, rather than law. [Citation.] The defendant need not intend to deceive the plaintiff to give rise to an equitable estoppel." (*Superior Dispatch, Inc. v. Insurance Corporation of New York* (2010) 181 Cal.App.4th 175, 186; see also *Steinhart*, *supra*, 47 Cal.4th at p. 1315.) "A nondisclosure is a cause of injury if the plaintiff would have acted so as to avoid injury had the plaintiff known the concealed fact." (*Superior Dispatch*, at p. 187.) Whether a plaintiff's reliance is reasonable is a question of fact unless reasonable minds can reach only one conclusion based on the evidence. (*Ibid*.) The fact a plaintiff is represented by counsel, as well as the scope and timing of the representation, are relevant to the question of the reasonableness of the plaintiff's reliance. (*Id*. at pp. 187-188.)

As Board points out, equitable estoppel " 'ordinarily will not apply against a governmental body except in unusual instances when necessary to avoid grave injustice and when the result will not defeat a strong public policy.' " (*Steinhart*, *supra*, 47 Cal.4th at p. 1315.)

For purposes of its motion, Board accepts, as it must, that Zuckerman spoke with Osgood in December 2004, telling her he had found errors committed by plaintiff's prior controller and "[t]here had been significant overpayments made starting in [the second quarter of 2002] which resulted in a balance due to DR Systems from the [Board]." It accepts that in response, Osgood "indicated [to Zuckerman] that the next step was for [him] to write a letter to the SBE, under penalty of perjury explaining that there was a balance owed to DR Systems, Inc." This was not a conclusion of law, but a

24

representation of fact as to what Zuckerman should do to call the Board's attention to plaintiff's overpayments, or at least an omission as to how best to alert the Board of the overpayments. (Accord, *Superior Dispatch, Inc. v. Insurance Corporation of New York*, *supra*, 181 Cal.App.4th at pp. 190-191 [nondisclosure of policy terms stated in a contract was a nondisclosure of facts rather than legal conclusions, and reasonableness of plaintiff's reliance—its failure to discover the provision by other means—was likewise a question of fact].)

Under the circumstances, estoppel may apply if plaintiff can show Zuckerman reasonably relied on Osgood's statements to plaintiff's detriment. This again is a question of fact that is not amenable on summary judgment. (See *Superior Dispatch, Inc. v. Insurance Corporation of New York*, *supra*, 181 Cal.App.4th at pp. 187-188; *Vu v. Prudential Property & Casualty Inc. Co.* (2001) 26 Cal.4th 1142, 1152 [insurer's inspector's representation that total cost of repairs was less than an insurance policy's deductible was a communication of specific facts describing the nature and amount of damage that might estop the insurer from raising a statute of limitations defense where plaintiff could show he reasonably relied on the representation; whether the plaintiff's reliance was reasonable "depend[ed] on a myriad of factual questions . . . includ[ing]: whether [plaintiff] was qualified to evaluate the damage or had to rely on an expert [citation]; what [he] told the inspector about his damage; whether the inspector was qualified and, if not, whether [the plaintiff] knew of his lack of qualification; whether the inspector examined the entire property and, if not, whether [the plaintiff] knew the inspection was more limited; what lead [the plaintiff] to suspect his damage was greater

25

than the policy's deductible amount, and whether [the plaintiff] then acted diligently after he so suspected"].) The reasonableness of Zuckerman's reliance requires additional inquiry as to issues such as Zuckerman's qualifications, knowledge and experience in similar tax matters, Osgood's qualifications, and Zuckerman's knowledge of her qualifications.

Board maintains that under *Steinhart*, *supra*, 47 Cal.4th 1298, plaintiff's claim of equitable estoppel fails as a matter of law. But *Steinhart* involved a plaintiff represented by counsel who had confirmed he had read the applicable statutory scheme governing tax refunds. (*Steinhart*, *supra*, 47 Cal.4th at p. 1317, fn. 13.) The California Supreme Court observed the plaintiff's legal representation was a "significant" circumstance: "In general, the law 'particularly' disfavors estoppels 'where the party attempting to raise the estoppel is represented by an attorney at law,' " who is " 'charged with knowledge of the law in California.' " (*Id.* at p. 1316; see also *Advanced Network, Inc. v. Peerless Ins. Co.* (2010) 190 Cal.App.4th 1054, 1068; *Jordan v. City of Sacramento* (2007) 148 Cal.App.4th 1487, 1497.) Here, there is no evidence Zuckerman was represented by counsel, or other facts indicating that as a matter of law he should be charged with the knowledge of the legal requirements for, or steps leading to, a valid claim for a refund under section 6904.

Equitable estoppel nevertheless will not apply if doing so would "effectively nullify 'a strong rule of policy, adopted for the benefit of the public.' " (*City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 493.) In *McKnight*, the appellate court held the Board was precluded under principles of equitable estoppel from separately arguing that

26

plaintiff could not recover its unowed tax for its failure to pursue the refund claim to a merits-based denial. (*McKnight*, *supra*, 110 Cal.App.4th at p. 990.) *McKnight* observed it was the Board that had introduced the possibility of an early termination of the plaintiff's claim as a way to expedite resolution in the courts, and plaintiff had accepted the offer of termination and filed suit. (*Id*. at p. 992.) It found the equities favored estoppel: "On the one hand, denial of an estoppel would permit the Board to retain approximately $97,000 that was never owed by the taxpayer. On the other hand, a ruling in favor of the taxpayer would not impair the public policy in favor of exhaustion of remedies significantly. The exhaustion of remedies doctrine exists to allow an agency to apply its expertise before court resources are called upon, with the expectation that some lawsuits will be rendered unnecessary (because the agency corrects a mistake) and the remainder will proceed on a better-developed record. [Citations.] Here, the Board was alerted to the relevant legal principle and had facts before it showing that that legal principle entitled [plaintiff] to a refund. Over the course of years of proceedings, it had the opportunity to change its mind and obviate the need for a lawsuit. It nevertheless adhered to its position that the tax was owed up until this appeal. Ruling for the Board on exhaustion grounds would do little to encourage administrative resolutions in the future." (*Id*. at p. 992.) Because as a matter of substantive tax law no tax was due, equity would allow application of estoppel, and " 'justice and right require it.' " (*Id*. at p. 993, quoting *Lentz v. McMahon* (1989) 49 Cal.3d 393, 399.)

The Board may be bound by equitable estoppel where the "injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect

27

upon public interest or policy which would result from the raising of an estoppel." (*City of Long Beach v. Mansell*, *supra*, 3 Cal.3d at pp. 496-497; *West Washington Properties, LLC v. California Dept. of Transp.* (2012) 210 Cal.App.4th 1136, 1146.) Indeed, these facts present the sort of case in which estoppel against a governmental agency may be appropriate, that is, it is a situation where the claim is that a government agent has negligently or intentionally caused a claimant to fail to comply with a procedural precondition, and the failure to invoke estoppel would cause an injustice to the claimant. (See *Lentz v. McMahon*, *supra*, 49 Cal.3d at pp. 401-402 [holding application of estoppel would not seriously undermine the interests represented by the statute of limitations to encourage the timely presentation of claim and prevent windfall benefits; "Estoppel against a county's assertion of purely *procedural* preconditions and limitations on benefits, when the county itself is responsible for the procedural default, will not defeat the underlying statutory policy of safeguarding accurate and orderly administration of the welfare system"]; *McKnight*, *supra*, 110 Cal.App.4th at pp. 992-993.)

V. *"Self-Help" Credit Taken in Plaintiff's Third Quarter 2004 Return*

Lastly, plaintiff challenges the trial court's ruling as to the $59,232.46 credit taken in its third quarter 2004 return for second and third quarter 2002 overpayments. Plaintiff maintains the credit was pushed outside the statute of limitations by Board's 2006 audit; that the $59,232.46 amount taken as a credit is within the period of the waiver letters and it should be allowed a refund of that amount based on its claim filed on May 12, 2006. It compares the circumstances to those in *Sprint Communications Co. v. State Bd. of Equalization* (1995) 40 Cal.App.4th 1254, in which the court held a taxing authority may

28

raise as a set off against a taxpayer's refund action a tax deficiency that is otherwise barred from the taxing authorities assessment by the statute of limitations.

*Sprint* held that " '[a] refund case *throws open the taxpayer's entire tax liability for the period in question* [citation], and the Board *may raise issues unrelated to the basis or theory on which the taxpayer is seeking a refund* in order to defeat the claim.' . . . In other words, while a taxpayer's refund claim might be proper, there might be other items which the taxpayer omitted from its return for that year, which if included would show that the taxpayer had underpaid its tax." (*Sprint Communications Co. v. State Bd. of Equalization*, *supra*, 40 Cal.App.4th at p. 1260.) The proposition flows from the principle that a suit to recover a tax refund is an action in equity governed by equitable principles that " 'limit recovery to the difference between the tax actually paid and that which properly *should* be exacted, and . . . prevent recovery if the taxpayer paid only his fair and just proportion of taxes.' " (*Id*. at p. 1259, quoting *Simms v. County of Los Angeles* (1950) 35 Cal.2d 303, 316.)

We conclude, as Board argues, that *Sprint* does not stand for the proposition that a *taxpayer* may offset overpaid sales and use taxes that are otherwise time-barred from a refund action against future taxes owed. However, because the $59,232.46 is encompassed within the overpayments assertedly paid in the second and third quarters of 2002 that Zuckerman addressed with Osgood in his December 2004 and January 2005 communications, it is subject to the trier of fact's determination of equitable estoppel.

Though plaintiff sought summary adjudication "on the issue of whether a letter sent to the [Board] on January 7, 2005 constitutes a Claim for Refund," Board did not

seek summary adjudication of that issue.  Accordingly, in view of the existence of triable issues of material fact as to the application of equitable estoppel, we reverse the summary judgment.

## DISPOSITION

The judgment is reversed.  The parties shall bear their own costs on appeal.


O'ROURKE, J.

WE CONCUR:


BENKE, Acting P. J.


McINTYRE, J.